# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTAL A PARKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 05-3081-CV-S-GAF-SSA |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

Plaintiff filed two applications under the Social Security Act (the Act). The first is an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, *et seq*. The second is an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*.

Plaintiff's application were combined and denied initially on August 7, 2003. On October 29, 2004, following a hearing, an administrative law judge (ALJ) rendered a decision in which he found plaintiff was not under a "disability" as defined in the Act. On December 21, 2004, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.[1]

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Johnson v.*

---

[1] Upon review of the record and applicable authority herein, defendant's position is found to be controlling. Much of defendant's brief is adopted without quotation noted.

*Chater*, 108 F.3d 178, 179 (8th Cir. 1997). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998). Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *See Id.* If, after reviewing the record, the Court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision of the Commissioner. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations omitted).

The Commissioner's regulations governing determinations of disability set forth a five-step sequential evaluation process which the Commissioner must use in assessing disability claims. *See* 20 C.F.R. § 404.1520. First, a claimant has the burden of proving disability by establishing a physical or mental impairment which will persist for at least twelve consecutive months and prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 416(i), 423(d0(1)(A); *See* 20 C.F.R. § 404.1520(b).

Second, a determination is made as to whether any of a claimant's alleged impairments are "severe" under Agency regulations. *See* 20 C.F.R. § 404.1520. If no severe impairments are found, a finding of not disabled is warranted. *Id.*

Third, an analysis is made as to whether any of a claimant's impairments, whether alone or in combination, meet or equal any of the criteria for listed impairments found at 20 C.F.R. Part 404, subpart P, appendix 1. *See* 20 C.F.R. § 404.1520(d). This determination is made without regard to age, education, or work experience. Impairments that meet or equal a listed impairment require a

finding of disability. Impairments that do not do so require a determination of a claimant's residual functional capacity (RFC).

Fourth, a determination is made, based upon a finding of a claimant's RFC, whether a claimant can return to his or her past relevant work, either as it was performed or as it is generally performed in the national economy. *See* 20 C.F.R. § 404.1520(e). If a claimant establishes he or she is not able to return to his or her past relevant work, the burden of proof shifts to the Commissioner to show that the claimant can perform work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(e). The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines or vocational expert testimony. *See* 20 C.F.R. §§ 404.1566(e) and 404.1569.

Plaintiff applied for disability benefits on May 7, 2003, alleging that as of May 1, 2002, she was disabled due to Chron's disease, panic attacks, heart problems, spina bifida, brain mass, spastic bowel syndrome, and degenerative disc disease of the lumbar spine. After consideration of the record, the ALJ determined plaintiff had severe impairments, including mild degenerative lumbar disc disease, Chron's disease versus irritable bowel syndrome, and migraines, but she did not have an impairment or combination of impairments that either met or equaled those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing of Impairments.

The ALJ then determined plaintiff had the RFC to perform a wide range of light work per 20 C.F.R. § 404.1567(b) in that she could lift and carry twenty pounds occasionally and ten pounds frequently, could stand or walk for a total of six hours in an eight-hour work day, and could sit for a total of six hours in an eight-hour work day. He also found plaintiff's RFC allowed for occasional to frequent stooping and she had no significant limitation in her ability to use her bilateral upper and lower

extremities to operate hand/foot controls, for gross motor or fine movements, or for performing job tasks requiring fine manual dexterity. He further found plaintiff had no significant limitation of ability to perform basic mental work-related activities, with no limitation in the ability to understand, carry out, and remember instructions; use judgment; respond appropriately to supervision, co-workers, and usual work situations, as well as deal with changes in a routine work setting.

The ALJ further found plaintiff was capable of at least semi-skilled work, consistent with her educational attainment and demonstrated abilities in her past relevant work and current employment as a tractor-trailer truck driver. Given this RFC, and based upon testimony from a vocational expert, the ALJ determined plaintiff could perform her past relevant work as a housekeeper cleaner, food sales clerk, sales clerk, and hotel clerk, both as she performed them and as they are performed in the national economy.

In March of 2000, over two years prior to her alleged onset date of disability in May 2002, plaintiff presented to an emergency room complaining of stress after an altercation with her daughter. Plaintiff was diagnosed with an anxiety attack that caused jerky movements in her right arm, generalized anxiety disorder, and a sprained left ankle. In July 2001, plaintiff purposely overdosed on anti-depressant mediation in a suicidal attempt. Also in July 2002, plaintiff had a panic attack when she lost her job. At that time, she was diagnosed with acute adjustment disorder, anxiety attack, and hyperventilation syndrome. A subsequent emergency room visit indicated histrionic features in January 2003.

In her administration hearing, plaintiff acknowledged she was not receiving any treatment for alleged mental impairment and she made no claim that depression, and presumably anxiety, interfered

4

with her ability to work. This was in contrast to the opinion of plaintiff's treating physician, James J. Cesar, D.O., who indicated on a checklist form that plaintiff had depression on numerous occasions.

In his decision, the ALJ noted plaintiff received minimal treatment for this alleged condition. Based upon the medical evidence of record and plaintiff's continued work as a truck driver, the record supports the ALJ's determination that any alleged anxiety did not significantly limit plaintiff's ability to perform work activities and, therefore, was not a severe impairment under 20 C.F.R. §§ 404.1520(b) and 416.920(b).

As noted by the ALJ, mental impairments have presented some difficulties for plaintiff, but given these findings, the record supports the ALJ's finding that plaintiff's mental impairments were not severe under Agency regulations.

A computer tomography scan of plaintiff's lumbar spine in January 2003 indicated she had a three millimeter generalized bulging disk at L4-5 and L5-S1 without fractures or dislocation. A CT scan of the cervical spine was essentially normal. These CF scans were occasioned by plaintiff's visit to Skaggs Community Health Center's emergency room after she claimed a television she was moving fell on her. Plaintiff was described as a "frequent flier here in the emergency department." Her alleged immobility ceased when she was informed her x-rays were negative. This was the first treatment plaintiff sought after her alleged period of disability began in May 2002. The ALJ found this lack of treatment significant, especially since plaintiff had a medical card.

The record reflects that back problems have presented some difficulties for plaintiff, and supports the ALJ noting plaintiff's back problems merited identification as severe, but not disabling.

5

Other impairments alleged by plaintiff include seizure activity and migraine headaches. An electroencephalogram (EEG) in May 2003 indicated normal awake and sleep activity. In February 2003, an MRI of plaintiff's brain showed a tiny lesion in the left occipital white matter of uncertain significance and no other brain abnormality.

Plaintiff was examined by Kenneth S. Sharlin, M.D., a neurologist in June 2003. Dr. Sharlin noted plaintiff had a normal mental status, normal cranial nerves, normal motor function, coordination, sensation, and reflexes, except for her right big toe and her right ankle. Dr. Sharlin reported a May 2003 EEG was normal, and determined that an indication of a tiny lesion was clinically insignificant. He assessed plaintiff with probable migraine variant, anxiety disorder, and low back pain with right-sided radiculopathy.

In July 2003, plaintiff was again examined by Dr. Sharlin, who found plaintiff had probable migraine variant, low back pain, and subjective memory loss. He increased plaintiff's dosage of Lamictal. Plaintiff said she had no side effects from the medication. Dr. Sharlin also wanted to conduct a neuro-psychological test for memory loss. The medical record shows no further treatment by Dr. Sharlin, although plaintiff claimed she received treatment from him for one year. Given these findings, the ALJ properly found plaintiff's seizure activity and migraine headaches were a medically determinable impairment, but were not disabling. The ALJ followed the five-step sequential order of evaluation set out in 20 C.F.R. § 416.920, as well as the factors for evaluating subjective complaints set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), and found plaintiff not fully credible. The factors the Commissioner must consider include: objective medical evidence; plaintiff's work record; evidence relating to plaintiff's daily activities; the duration, intensity and frequency of pain; dosage,

6

effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions.[2] *Id*. at 1321-1322. The primary question is not whether plaintiff experiences the subjective complaints alleged, but whether those symptoms are credible to the extent that they prevent her from performing substantial gainful activity. *See McGinnis v. Chater*, 74 F.3d 873, 874 (8th Cir. 1996). Where an ALJ specifically discredits a claimant's testimony for stated reasons, the court normally defers to the ALJ's determinations of credibility. *See Russell v. Sullivan*, 950 F.2d 542, 545 (8th Cir. 1991).

The ALJ noted the record contained evidence of washing dishes, doing laundry, vacuuming, shopping, driving, and other activities, including caring for a disabled child. Additionally, in November 2002, plaintiff began classes to earn certification as an over-the-road tractor-trailer truck driver. She had no restrictions on her commercial driver's license. Not insignificantly, plaintiff also worked as a tractor-trailer truck driver during her period of alleged disability, although she claimed to work only four to five hours per day and that such work was for her former brother-in-law.[3] Typically, when she drives, she is gone for two-week periods. These activities are not reflective of an inability to work.

---

[2] "[An] ALJ [is] not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

[3] The ALJ did not find that this work constituted "substantial gainful activity" (whereby a finding of not disabled would have been appropriate per 20 C.F.R. §§ 404.1520(a) and 416.920(a)) because the work was too recent to have been posted to plaintiff's earnings record and had not taken place during the majority of the alleged period of disability. However, this work activity strongly mitigates against a finding of disability. Plaintiff is claiming to be disabled from all work activity. *See* 20 C.F.R. §§ 404.1505 and 416.905.

The ALJ correctly made reference to the same in his decision. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

Plaintiff further complains the ALJ did not consider the effect of her alleged impairments in combination. In *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992), the Eighth Circuit held the ALJ sufficiently considered impairments in combination when he separately discussed each impairment, the complaints of pain and the daily activities, and made a finding that plaintiff's impairments did not prevent her from performing her past relevant work. Such is the case here. The ALJ's decision establishes he considered all of plaintiff's alleged impairments in determining she was not disabled.

Additionally, plaintiff argues the ALJ did not properly develop the record. Although an ALJ generally has a duty to develop the record fully and fairly, he is entitled to assume an application is making his strongest case for benefits when represented by counsel. *See Miller v. Sullivan*, 953 F.2d 417, 422 (8th Cir. 1992); *Coats v. Bowen*, 676 F. Supp. 939, 945 (W.D. Mo. 1987). "There is no bright line test for determining when the [Commissioner] has . . . failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Lashley v. HHS*, 708 F.2d 1048, 1052 (6th Cir. 1983)). Furthermore, reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial. *Onstead v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). The record reflects plaintiff was treated fairly and she has failed to show she was prejudiced.

Plaintiff argues the ALJ improperly rejected the opinion of her treating physician, Dr. Cesar, to the extent the doctor indicated plaintiff was disabled. Dr. Cesar was plaintiff's treating physician and Dr. Cesar completed a statement plaintiff was disabled due to chronic back pain; however, subsequent

8

statements by Dr. Cesar cast legitimate doubts upon the process by which he reached this conclusion. Although the ALJ did not recite the factors found at 20 C.F.R. § 404.1527(d) when he discussed the various medical opinions in the record, he did note Dr. Cesar's assessment was the source of some uncertainty since Dr. Cesar completed different documents that reached different conclusions regarding plaintiff's capabilities.

On May 6, 2003, Dr. Cesar completed a generic letter in which he stated plaintiff had degenerative lumbar disc disease and was not able to work due to chronic back pain. The ALJ noted this conclusion was one reserved to the Commissioner and was not, properly speaking, a medical opinion; rather it was a vocational one.

On July 11, 2003, Dr. Cesar indicated although an MRI suggested plaintiff had degenerative disc disease, most of the pertinent findings were "totally subjective" and he believed plaintiff was capable of "light/sedentary work." He further stated, "there are no objective neurologic findings except localized tenderness" and a "recent nerve conduction study was normal."

On August 27, 2003, Dr. Cesar completed a Medical Source Statement-Mental in which he found plaintiff moderately limited in a number of mental faculties and markedly limited in her ability to complete a normal work day or work week and in her ability to make simple work-related decisions due to psychologically based symptoms. On the same date, Dr. Cesar completed a Medical Source Statement-Physical in which he found plaintiff could not lift more than ten pounds, could stand or walk for less than two hours in an eight-hour work day and had numerous other limitations that, if true, would render plaintiff disabled.

9

Also on August 27, 2003, Dr. Cesar completed a supplemental Medical Source Statement-Physical in which he stated plaintiff had to lie down three to four times per day for period of one to two hours. Then, on June 8, 2004, Dr. Cesar completed yet another Medical Source Statement-Physical in which he found plaintiff could lift no more than ten pounds, stand for less than two hours in an eight-hour work day, and could sit for only four hours total (and needed a sit/stand option). He also noted pushing/pulling limitations, as well as postural limitations, and assigned manipulative limitations due to low back pain and additional environmental limitations.

Moreover, the ALJ found Dr. Cesar provided no detailed rationale to support his function by function assessments of plaintiff's enumerated limitations. This lack of rationale, coupled with his prior finding that plaintiff's limitations were subjective in nature, casts doubt upon such unsupported findings. Regarding mental limitations, the ALJ noted Dr. Cesar is not a qualified mental health specialist. Also significant, the ALJ noted Dr. Pierce performed an evaluation of plaintiff and found her fit to perform her job as an over-the-road tractor-trailer truck driver.

In any event, deference to a treating physician's opinion is not always justified. When the treating physician's opinion consists of nothing more than conclusory statements, the opinion is not entitled to greater weight than any other physician's opinion. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). Also, the weight to be given a treating physician's opinion depends on the extent to which it is supported by complete medical signs and findings and is consistent with other medical evidence of record. *See Ward v. Heckler*, 786 F.2d 844 (8th Cir. 1986). In this case, the ALJ found that the findings of Dr. Cesar were inconsistent with the objective medical evidence of record, plaintiff's activities, and the other evidence of record. The record supports the ALJ's finding that Dr. Cesar's

opinions were not deserving of controlling weight, to the extent that such findings suggested that plaintiff was disabled.

After evaluating plaintiff's subjective complaints, the ALJ formulated her RFC based on all the credible evidence of record. *See* 20 C.F.R. § 404.1545. *See also Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Because plaintiff retained the RFC to perform her past relevant work, the burden of production never shifted to the Commissioner to produce evidence of jobs in the national economy that could be performed by a person with plaintiff's RFC and vocational skills. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The record reflects the ALJ relied upon vocational expert testimony in concluding that plaintiff could perform some of her past relevant work.

The ALJ met his duty of determining plaintiff's RFC based on all of the relevant evidence. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); *see also Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000) (citing 20 C.F.R. § 416.945; Soc. Sec. Ruling (SSR) 96-8p, at pp. 8-9). Plaintiff did not sustain her burden of proving her RFC prevents her from performing her past relevant work. *See Young v. Apfel*, 221 F.3d 1065 (8th Cir. 2000); *see also* 68 Fed. Reg. 51154 *et seq* (August 26, 2003).

The ALJ properly limited plaintiff's RFC to include only those impairments and limitations he determined to be credible and excluded those that were not. *See Lorenzen v. Chater*, 71 F.3d 316, 318 (8th Cir. 1995). The ALJ's assessment of plaintiff's RFC was based upon substantial evidence.

The ALJ explicitly found plaintiff could meet a range of light work per 20 C.F.R. §§ 404.1567(b) and 416.967(b). To support this finding, the ALJ relied upon the evidence of a vocational expert. Although a hypothetical question must set forth with reasonable precision the claimant's

11

Case 6:05-cv-03081-GAF   Document 11   Filed 09/02/05   Page 11 of 12

impairments, *Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992), it need only include those impairments and limitations found credible by the ALJ. *See Pertuis v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997). In this case, the ALJ limited his hypothetical question to the limitations he found credible based on the entire record of evidence. He did not include all of the limitations noted by Dr. Cesar since he did not find those limitations as based on substantial evidence in the record.

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED:    September 2, 2005